*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AYALA/ROBERTS, Minors.

UNPUBLISHED
September 08, 2025
3:05 PM

No. 372891
Wayne Circuit Court
Family Division
LC No. 2022-001775-NA

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children, LWGA and LJR, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); (c)(*ii*) (other conditions exist causing the children to come within the court's jurisdiction); (g) (despite being financially able, the parent fails to provide proper care); and (j) (reasonable likelihood the children will be harmed if returned to the parent). We affirm.

## I. BACKGROUND

LJR tested positive for codeine, methadone, morphine, fentanyl and Tramadol after his birth. At the same time, respondent tested positive for opiates, codeine, fentanyl, Tramadol, and methadone. LJR experienced withdrawal symptoms including excessive crying, difficulty feeding, and increased tremors as a result of respondent's substance abuse while pregnant with him. Based on these facts, on November 16, 2022, petitioner, the Department of Health and Human Services (DHHS), filed a petition requesting that the trial court take jurisdiction over LWGA and LJR. The trial court authorized the petition and removed the children from respondent's care. LWGA was in a relative placement with his aunt, and LJR was to enter foster care once he was released from the hospital.

At the adjudication hearing on December 2, 2022, respondent admitted that she voluntarily abused substances while pregnant with LJR. Respondent also noted that she was diagnosed with mental-health issues including depression, anxiety, attention deficit disorder, and post-traumatic stress-disorder, for which she did not receive treatment. The trial court found statutory grounds to exercise jurisdiction over the children. The trial court also ordered respondent to participate in a

treatment plan that required her to complete substance abuse assessments and weekly drug screens as well as find housing; obtain a legal income; participate in psychological and psychiatric evaluations; and attend parenting classes.

Throughout the proceedings, respondent consistently failed to comply with or benefit from her court-ordered treatment plan. Respondent did not attend drug screenings or provide proof of income or housing, and the DHHS repeatedly referred her to services, such as parenting classes and mental health treatment. During parenting times, (1) respondent discussed inappropriate topics with LWGA, such as details of the case and a timeline for reunification, which caused anxiety in LWGA and negatively affected his behavior in his placement and at school; (2) she required LWGA's help to care for LJR; (3) she was unable to divide her attention between both children and instead focused on LWGA; (4) she was unable to console LJR; and (5) she was prone to angry outbursts. In contrast, the children were thriving in their placements.

Due to respondent's lack of progress in her treatment plan over 15 months, the DHHS filed a supplemental petition to terminate her parental rights on April 8, 2024. At the termination hearing, respondent pleaded to the allegations in the supplemental petition establishing the statutory grounds for termination, and the parties stipulated to these statutory grounds. Based on respondent's plea and the stipulation, the trial court found statutory grounds to terminate respondent's parental rights. At the best-interests hearing, the trial court found that it was in LWGA's and LJR's best interests to terminate respondent's parental rights. This appeal followed.

## II. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19(b)(3) has been proven by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). Based on her plea and the parties' stipulation, the trial court found statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Respondent does not challenge the statutory grounds for termination. She instead only argues that the trial court clearly erred by finding that termination of her parental rights was in the best interests of LWGA and LJR. Respondent's argument is without merit.

Once a trial court has found that there are statutory grounds to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the children's best interests. MCL 712A.19b(5); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews "for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). A trial court considers several factors to determine whether termination of parental rights is in a child's best interests, including "the child's bond to the parent,

the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). The child's bond with the parent is only one factor that a trial court must weigh when deciding whether termination is in a child's best interests, and it does not necessarily outweigh other factors. *In re White*, 303 Mich App at 714. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted). Additionally, "the trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

We conclude that the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of the children. Respondent argues on appeal that she is currently clean of substances and that there is a reasonable likelihood that she will remain so in the future. This argument is belied by the record. Respondent admitted to substance abuse while pregnant with LJR, who tested positive for codeine, methadone, morphine, fentanyl, and Tramadol at birth. Throughout the proceedings, respondent consistently refused to participate in her treatment plan. Respondent did not submit to random drug screens or submit proof that she was engaged in substance-abuse therapy. Further, respondent was incarcerated at one point during these proceedings and had pending drug-related felony criminal charges. Respondent admitted at the best-interests hearing that she was not "clean the whole time."

Next, respondent argues that she is bonded with the children. The trial court individually considered each child when determining best interests. First, the court considered LWGA and acknowledged that there was a bond between LWGA and respondent. However, the trial court found that respondent's communications with LWGA were inappropriate for his age. Further, LWGA's relationship with respondent caused him anxiety and negatively affected his behavior at school. Also, LWGA has attention deficit hyperactivity disorder and autism that requires full time attention from his placement, and respondent did not attend his medical appointments. Respondent has significant, untreated mental-health issues. Respondent refused to comply with her treatment plan to address these issues. Although she completed parenting classes, she did not demonstrate that she benefitted from the classes. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (respondent has a commensurate responsibility to comply with and show benefit from services). Thus, despite the presence of a bond with LWGA, respondent was unable to show throughout the proceedings that she had the ability to parent or address her own mental-health issues, let alone LWGA's special needs.

Regarding LJR, the trial court acknowledged that respondent appeared to have "some" bonding with LJR, but determined that this factor was outweighed by other considerations. LJR had gastroenterological issues, requiring a special diet, and respondent did not always comply with those needs during parenting times, as evidenced by bringing inappropriate snacks. Respondent did not attend LJR's medical appointments. Respondent needed assistance changing LJR's diaper, would ask for LWGA's help with LJR, and could not console LJR. Respondent also had difficulty dividing her attention between both children and instead focused on LWGA. Additionally,

respondent was prone to angry outbursts during parenting time. Respondent never progressed past supervised visits with the children.

When considering both children, the trial court emphasized respondent's "very limited" compliance with her treatment plan. In addition to failing to participate in drug screens or mental-health services, respondent failed to provide proof of employment or a copy of the lease for her apartment. The DHHS was required to refer respondent to services multiple times, but she repeatedly refused to participate. Meanwhile, LWGA and LJR were doing well in their placements and their needs were being met. The children required permanency, stability, and finality, which respondent was unable or unwilling to provide, despite being given ample opportunities to do so.

Finally, relative placement is an "explicit factor to consider in determining whether termination was in the child[]'s best interests[.]" *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re VanDalen*, 293 Mich App 120, 147; 809 NW2d 412 (2011) (quotation marks and citation omitted). The trial court considered LWGA's relative placement, but properly weighed other relevant factors including respondent's persistent substance-abuse and mental-health issues, as well as her noncompliance with her service plan, in finding that termination was in LWGA's best interests.

As a result, the trial court did not clearly err by finding, by a preponderance of the evidence, that termination of respondent's parental rights was in LWGA's and LJR's best interests because respondent could not provide the children with the permanency and stability they required due to her ongoing struggles with substance abuse and mental health.

Affirmed.


/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien